WILLIAM NELSON, Jr., APPELLANT, v. THE MAYOR, ETC., OF THE CITY OF NEW YORK, RESPONDENT.

*Chap.* 551 *of* 1866 — *chap.* 137 *of* 1870 — *chap.* 574 *of* 1871 — *Construction of* — *Commissioner of public works* — *powers of, to contract.*

Under sections 9, 10 of chapter 551 of 1866, and the provisions of section 110 of chapter 137 of 1870, as amended by section 8 of chapter 574 of 1871, the commissioner of public works in the city of New York has no power to make contracts for materials for sewers exceeding in amount the sum of $100,000.

APPEAL from a judgment entered on the dismissal of plaintiff's complaint at Circuit.

The complaint alleged that on the 29th day of April, 1871, an agreement was made by the plaintiff with the defendants, through the commissioner of public works, to furnish certain large quantities

of pipes to be used in the construction of sewers. That certain large quantities of such pipes had been furnished, amounting to $181,835, upon which $127,284 had been paid, and $54,550 remained unpaid.

The answer denied that any lawful contract was ever made for the supply of the pipe named. It averred that the commissioner of public works had no authority to make and enter into the agreement set forth in the complaint. That no ordinance of the common council had ever been passed authorizing the expenditure of money for furnishing or providing the articles named in the complaint.

That the plaintiff was not the lowest bidder for the material named; that one Thomas McMann, at the letting of the contract, had offered and proposed to furnish the articles furnished by the plaintiff at prices amounting to an aggregate sum of $70,000 less than the plaintiff's contract-prices.

When the plaintiff rested, the defendants' counsel moved to dismiss the complaint upon the grounds:

1. That there was no ordinance of the common council authorizing the contract, or other proof that the defendants had authorized the commissioner of public works to make the contract.

2. That it was not shown that any appropriation had been previously made covering the expense contemplated in the contract.

The court thereupon dismissed the complaint, and plaintiff's counsel excepted.

*A. J. Vanderpoel,* for the appellant.

*David J. Dean,* for the respondent.

Davis, P. J.:

It is claimed that this case is governed by the case of *Green* v. *The Mayor* (decided by the Court of Appeals, March 23, 1875), the opinion in which, Rapallo, J., is now before me. In cases strictly within that decision, we are of course constrained to follow it, whatever may be our own judgments in regard to its correctness; but inasmuch as three judges of that court dissented and concurred in the opinion of Miller, J., which was in accordance with the conclusions of four judges of this court, we feel under no restraint

to extend the decision. The complaint in this case was dismissed by the learned justice at Circuit on one or both of the following grounds: " First. That there was no ordinance of the common council authorizing the contract, or other proof that the defendants ever authorized the commissioner of public works to make a contract. Second. That it was not shown that any appropriation had been previously made, covering the expenses contemplated by the contract."

It is contended by the appellant, that the power conferred by sections 9 and 10 of chapter 551 of the Laws of 1866, is general and unlimited in its character and that the board, or the commissioner who succeeded to the powers of that board, could, in their or his discretion, make contracts for the materials used in the construction of sewers to any extent, and in whatever quantity they or he chose ; and that the comptroller is bound to pay for the same out of the proceeds of bonds to be issued under section 10 of the same chapter. If this contention be well founded, this case comes within the decision of *Green* v. *The Mayor*, and must be disposed of accordingly. It is, however, insisted by the respondents, that the power conferred by section 9 of the chapter mentioned, is subject to two limitations : First. That it was not intended to give unlimited power to contract for, and lay up stores of materials to whatever extent the ' board or the commissioner chose, without regard to the wants for present and authorized use, but to provide for such sewers — the construction of which the board had determined upon and undertaken, and for which materials were therefore necessary — by a general contract for such materials to the full extent requisite in the construction of all the sewers so determined upon, instead of being required to limit their contract or purchase to the materials necessary for each specific sewer; and, secondly, that however general the power given was, it was yet restricted in amount to the sum of $100,000 appropriated, and out of which the contract-price was to be paid by the comptroller.

General as the language of section 9 is, we are strongly inclined to think that the construction claimed for it by the respondents is the true one. If it be not so, then the aqueduct board, and, afterward, the commissioner of public works, were empowered to store up by purchase, at pleasure, unlimited quanti-

ties of sewer materials, regardless of any present want, and covering all future supposed wants for an indefinite period of time. The power to purchase $1,000,000, or $5,000,000 or $10,000,000 worth of such articles, and create a debt upon the city therefor, would be just as clearly within the act, as to contract for the actual wants of sewers determined upon and undertaken. In looking for the intent of the statute, it is a just subject for consideration, that one construction opens a wide door for unbounded discretion and the largest frauds, while the other simply removes a restriction, which, under the former act, compelled a separate contract for each sewer, and gave power to purchase by one contract for all sewers already determined upon and undertaken in conformity to the general act.

The contract in question was one of unlimited character. It contracted for about $182,000 worth of earthen sewer pipes, not for present and legal wants which had arisen by action of the commissioner in determining upon sewers to be built, but for the laying up of large supplies to meet future wants which might, or might not, lawfully arise. This is claimed to be its character, and it does not appear to have been otherwise. That such a system would be improvident, and probably wasteful to a large degree, when applied to the public works of a State or city, and used for the expenditure of public moneys, needs no argument to establish. And that it would lead to favoritism and gross frauds needs no other illustration than to suppose the allegation of the answer, that in this particular case the bid of a responsible party at $70,000 less than the sum at which the contract was awarded to plaintiff, was not accepted by the commissioner.

But if this construction of the power given be not sound, we think the second point, that the power to contract was necessarily limited to the sum which the comptroller was authorized to raise and pay, is well taken. Section 9 of the act directs the comptroller to pay, on the requisition of the aqueduct board, from the proceeds of the bonds "hereinafter authorized to be issued for such materials" and the expenses for engineers, surveyors, inspectors and other persons employed; and section 10 provides that, for the purpose of making the payments provided for in the preceding section, the comptroller may issue assessment bonds, in addition to those authorized by existing laws, *not to exceed the sum of one hundred thousand dollars.*

**194**          NELSON *v.* MAYOR.

This sum must be regarded as an appropriation for the purpose of such contracts as the commissioner was authorized to make, and it operates as a restriction upon his power to contract, by requiring it to be exercised within that limit.

It can hardly be urged that it was intended that the comptroller should be obliged to issue $100,000, *die in diem*, or so often as the commissioner should advise him that he had made a contract for materials for sewers requiring that amount. If so, the indebtedness of the city would be rolled up indefinitely, notwithstanding the language of section 10 declaring that the bonds thereby authorized "are not to exceed the sum of $100,000." With this limitation before his eyes, the commissioner had no power to make a contract for materials to the amount of $182,000. And the plaintiff was bound to take notice of such want of power. But if there be any doubt of the limitation by force of the sections 9 and 10 of the act in question, we think that doubt is removed by subsequent legislation. The contract in this case was made in April, 1871. By section 110 of chapter 137 of the Laws of 1870, as amended by section 8 of chapter 574 of the Laws of 1871, it is declared that "no expense shall be incurred by any of the departments, boards or officers [of the city] whether the object of the expenditure shall have been ordered by the common council *or not*, unless an appropriation shall have been previously made, covering such expense." This salutary restriction is applied in plain terms to all departments, boards and officers of the city, and to *all objects of expenditure*, whether ordered by the common council, *or not so ordered*, and must embrace all expenses *incurred*, for there can be none which are not either ordered, or not ordered by the council. It operated therefore to restrict the power of the commissioner of public works to incur expense under section 9 of the act of 1866, to the sum appropriated, and that sum, by the language of section 10, was "not to exceed $100,000."

If it be granted that section 10 of the act conferred a continuous power, to be repeated *ad libitum*, or from year to year (which I by no means assent to, for I think the power under section 9 was exhausted, whenever materials were contracted for to the extent of $100,000), yet that power was expressly subject by the acts of 1870, 1871 to the restriction thereby created.

It follows, that the contract in this case was one which needed the authority of the common council, because the authority given by the law under which it is claimed to have been made, is too short for its purpose, and that it was invalid, without an appropriation by the common council, or by the legislature, because it incurred an expense beyond any appropriation previously made " covering such expense."

The judgment should therefore be affirmed.

Daniels, J., concurred.

Judgment affirmed.